### George E. Bode *v*. The State.

1. CHARGE OF THE COURT. — See the opinion for a charge *held* to be error because it required the jury to find whether a gun, loaded, but without caps upon the tubes, was, when attempted to be shot, capable of producing death or serious bodily harm.

2. SELF-DEFENCE. — Self-defence cannot be made to depend upon whether a gun is or is not loaded, or will or will not shoot, unless it be shown that the party upon whom it was attempted to be used knew that it was not loaded, or that it would not shoot.

APPEAL from the District Court of Medina.    Tried below before the Hon. T. M. PASCHAL.

The opinion discloses the case.

*M. G. Anderson*, for the appellant, assigning as error that the court erred in refusing a new trial, and that the

verdict was against the law and the evidence, cited *Shaw* v. *The State*, 27 Texas, 757 ; *Johnson* v. *The State*, 27 Texas, 464 ; *Smeltzer* v. *The State*, 31 Texas, 95 ; *Underwood* v. *The State*, 25 Texas, 389 ; *Loza* v. *The State*, 1 Texas Ct. App. 488.

*Thomas Ball*, Assistant Attorney-General, for the State, cited 5 Texas Ct. App. 423 ; 5 Texas Ct. App. 398 ; 4 Texas Ct. App. 456.

WHITE, J.   Appellant was indicted and tried for the murder of Charles Schweitzer, his brother-in-law, and was found guilty of murder in the second degree, with his punishment assessed at seven years in the penitentiary. A brief summary of the facts will elucidate the view we have taken of the case.

Appellant, his father, deceased, and one William R. Lantz were teamsters, hauling goods from San Antonio out West, on the twenty-third day of December, 1878.   They were all drunk, or had been drinking freely.   Beyond the little village of Dhanis, the deceased, who had been bantering defendant to wrestle, playfully grabbed hold of defendant, and in a perfectly good humor they commenced wrestling. Defendant threw deceased several times.   The last time, in falling, the deceased was hurt by a rock upon which he fell, and became angry.   Defendant would wrestle no more. Deceased insisted that he was the better man.   Defendant replied, " No, you are not, now, Charley ; you used to be, but the difference is that you are getting worse, and I am getting better all the time."   Deceased then said, " I will have my revenge yet."

After reaching camp and disposing of their teams, deceased went to the wagon of the witness Lantz, and took a double-barrelled shot-gun, loaded with turkey-shot, off the seat.   Witness Lantz took the gun from him, and proposed taking the weapons of both parties and firing them off.   Defendant had a five-shooter, but had not attempted to use it.

Witness then said to defendant, "George, let's go off awhile, and this will be all right in the morning." "We then walked off some twenty or twenty-five steps, when defendant said, 'This is far enough.'" Witness sat down, laying his gun, which he had taken from deceased, on the ground by his side. Defendant squatted in front of him; but, instead of sitting down, picked up the gun and started walking rapidly towards deceased's wagon. Deceased was at his wagon, trying to untie his gun. As defendant advanced, he said several times to deceased: "Charley, don't you untie that gun;" to which deceased replied, "I will untie it, and d—d if I don't shoot you, too." When defendant got within ten or twelve feet of deceased, he stopped, threw up his gun to his shoulder, and fired; the load struck deceased in the mouth, and he fell dead. Deceased must have had his gun in his hand at the time he was shot, for the gun was lying on the ground, close by his body, after he fell. Defendant told witness to go and report the matter to the officers of the law; and he himself saddled a horse and rode off, and on the next day appeared at the sheriff's office in San Antonio, and told a deputy that he had killed a man in self-defence, and wanted to give himself up; and the officer took him in charge and placed him in jail.

This is all the testimony, except the evidence of the coroner, who testified with regard to the inquest, and, further, that "the person who shot him (deceased) must have been very close to him, from the nature of the wound. By the side of deceased was a double-barrelled shot-gun, loaded, but without any caps on the tubes."

Whilst the charge of the court was, in the main, correct, we think an error was committed in the sixth paragraph, which doubtless misled the jury. This sixth paragraph is in these words: "It is for the jury to determine whether the deceased attempted to use a deadly weapon upon defendant; and if they find he did, they will also determine whether the instrument used was, in the manner deceased

Opinion of the court.

is shown to have attempted to use it, one capable of producing, in the manner used, death, or a serious bodily injury.'' Under this charge the jury were to find and determine whether a gun, loaded, but without caps upon the tubes, was, when attempted to be shot, capable of producing death, or serious bodily injury. Self-defence cannot be made to depend upon whether a gun is loaded or not loaded, or will or will not shoot, unless it be proven that the party upon whom it is attempted to be used knew that it was not loaded, or knew that it would not shoot.

The judgment is reversed, and cause remanded for a new trial.

*Reversed and remanded.*